J-A06025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CURTIS MAURICE HARPER | : | |
| | : | |
| Appellant | : | No. 410 WDA 2023 |

Appeal from the PCRA Order Entered March 13, 2023
In the Court of Common Pleas of Cambria County
Criminal Division at No(s):  CP-11-CR-0000988-2016

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.:                **FILED: May 10, 2024**

Curtis Maurice Harper appeals from the order entered in the Cambria County Court of Common Pleas on March 13, 2023, denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. For the reasons discussed below, we find the PCRA court properly denied Harper relief and affirm.

On April 18, 2016, Harper was charged by criminal information with over fifty offenses related to drug trafficking. The charges stemmed from a statewide grand jury investigation.

On June 27, 2017, Harper entered a negotiated guilty plea to all charges. On July 31, 2017, the trial court sentenced Harper in accordance with the plea agreement to twenty-two to forty-four years' incarceration. Harper did not file any post-sentence motions or a direct appeal.

On January 19, 2018, Harper filed a timely *pro se* PCRA petition. Counsel was appointed and subsequently filed two amended PCRA petitions. The PCRA court held seven evidentiary hearings between July 2021 and September 2022. At the direction of the PCRA court, both parties submitted legal briefs for the court's consideration.

Before the court could rule on the petition, it learned that Harper's PCRA counsel had passed away in January 2023. New counsel was appointed to represent Harper and a status conference was held in March 2023. The PCRA court subsequently issued an opinion and order denying Harper's PCRA petition. This timely appeal followed.

On appeal, Harper argues the PCRA court erred in ruling that plea counsel was not ineffective for failing to pursue pretrial motions filed on Harper's behalf. Harper claims that his plea was not knowingly and intelligently entered as a result of ineffectiveness of counsel.

Our review of an order dismissing a PCRA petition is limited to examining whether the PCRA court's determinations are supported by the record and the court's decision is free of legal error. **See Commonwealth v. Shaw**, 217 A.3d 265, 269 (Pa. Super. 2019). Although we give great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record, we apply a *de novo* standard of review to the PCRA court's legal conclusions. **See Commonwealth v. Benner,** 147 A.3d 915, 919 (Pa. Super. 2016).

"A plea of guilty effectively waives all nonjurisdictional defects and defenses." **Commonwealth v. Gibson**, 561 A.2d 1240, 1242 (Pa. Super. 1989) (citation omitted). Here, Harper failed to raise a challenge to his guilty plea at any time before the trial court. Harper did not move to withdraw his plea either. He also failed to pursue a direct appeal. Therefore, any challenge to his guilty plea is undoubtedly waived. **See** 42 Pa.C.S.A. § 9544(b).

Seemingly recognizing this, Harper phrases his current challenge as a claim counsel was ineffective for advising him to plead guilty instead of pursuing pretrial motions.

"A criminal defendant has the right to effective counsel during a plea process as well as during trial." **Commonwealth v. Rathfon**, 899 A.2d 365, 369 (Pa. Super. 2006) (citation omitted). However, "[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." **Commonwealth v. Hickman**, 799 A.2d 136, 141 (Pa. Super. 2002) (citation omitted). Also, "[w]here the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." **Id.** (internal quotation marks and citations omitted).

We presume counsel is effective, and an appellant bears the burden to prove otherwise. **See Commonwealth v. Bennett**, 57 A.3d 1185, 1195 (Pa.

2012). The test for ineffective assistance of counsel is the same under both the Federal and Pennsylvania Constitutions. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Commonwealth v. Kimball*, 724 A.2d 326, 330-32 (Pa. 1999). An appellant must demonstrate: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *See Commonwealth v. Solano*, 129 A.3d 1156, 1162-63 (Pa. 2015). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *See id*. at 1163. Where, as here, the appellant entered a plea of guilty, in order to satisfy the prejudice requirement, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Rathfon*, 899 A.2d at 370 (citation omitted).

Extensive PCRA evidentiary hearings were held on Harper's claims in the instant PCRA petition. In its opinion, the PCRA court summarized its findings of fact from the seven PCRA evidentiary hearings as follows:

> 1. On June 27, 2017, [Harper], being represented by counsel, negotiated and accepted a plea agreement in which [Harper] pled guilty to all 58 counts included in the Information; Commonwealth also agreed to *nolle prosequi* charges stemming from three other dockets.
>
> 2. [Harper] completed both a written and oral colloquy in connection with the guilty plea.

3. [Harper] was sentenced on July 31, 2017, with Attorney Lovette present as counsel. The sentence was the same as the sentence anticipated in the plea agreement (22 – 44 years['] incarceration).

4. [Harper] did not file a direct appeal.

5. [Harper]'s instant allegations of ineffective assistance of counsel pertain only to Attorney Kevin Sanders and Attorney John Lovette [Attorneys Sanders and Lovette collectively, "Counsel"]. Counsel represented [Harper] at the time he entered his guilty plea. Attorney Patricia Moore had previously represented [Harper].

6. During her representation, Attorney Moore filed an omnibus pre-trial motion; Counsel subsequently filed a second omnibus pre-trial motion.

7. The second omnibus pre-trial motion was scheduled for argument for June 27, 2017.

8. Commonwealth had offered [Harper] a plea bargain; Commonwealth indicated June 27, 2017, would be the last day the offer would be available.

9. Operating pursuant to [Harper]'s direction, Attorney Sanders spent the majority of the courthouse's ordinary business hours on June 27, 2017, negotiating the plea agreement on [Harper]'s behalf and discussing the plea agreement (and [Harper]'s case) with [Harper].

10. Among the chief considerations [Harper] contemplated in electing to enter a guilty plea was the opportunity to eventually be released from prison and the substantial number of charges he was facing. In other words, [Harper] wanted to avoid the possibility of a *de facto* life sentence.

11. In the event a plea agreement was not reached, Attorney Sanders was willing, able, and prepared to litigate the second omnibus pretrial motion.

12. At all relevant times, [Harper] understood the nature, status, and happenings of his case, including but not limited to the matters contained within the second omnibus pretrial motion.

13. The second omnibus pretrial motion was not litigated solely because [Harper] pled guilty.

14. All of the information that [Harper] alleges (in the Second Amended Petition) he needed to possess to enter a voluntary and knowing plea relate to matters that would have been litigated in the second omnibus pretrial motion but for [Harper]'s decision to plead guilty.

15. [Harper] never requested for Counsel to withdraw his guilty plea during their representation.

16. Before the [c]ourt, [Harper] did not request to withdraw his guilty plea at sentencing nor beforehand.

17. [Harper] has not alleged (in the Second Amended Petition) any defect of any kind or ineffectiveness of counsel relative to the written and oral plea colloquies.

PCRA Court Opinion, 3/13/2023, at 2-3 (footnote omitted). After careful review of the record, we find the PCRA court's findings of fact are supported by the record. As such, we will not disturb them. *See Benner,* 147 A.3d at 919.

Based on the above findings, the PCRA court concluded that the only reason the Second Omnibus Pretrial Motion was not litigated was because Harper agreed to enter a guilty plea. *See* PCRA Court Opinion, 3/13/2023, at 5. Harper therefore waived the opportunity to litigate the motion by pleading guilty. *See id*.

Harper completed a written and oral plea colloquy. We agree with the PCRA court that Harper has not alleged any defect or ineffectiveness with the colloquies themselves. *See id*.

This Court has held where the record clearly shows the court conducted a thorough plea colloquy and the defendant understood his rights and the nature of the charges against him, the plea is voluntary. **See Commonwealth v. McCauley**, 797 A.2d 920, 922 (Pa. Super. 2001). In examining whether the defendant understood the nature and consequences of his plea, we look to the totality of the circumstances. **See id.**

On June 27, 2017, at around 10:00 a.m., Harper appeared before the trial court for a scheduled hearing on pre-trial motions. At the start of the hearing, the Commonwealth put forth a plea offer on the record. **See** N.T., Plea Hearing, 6/27/17, at 2. The Commonwealth clarified that it was the last day for Harper to accept the plea offer. **See id**. Harper requested more time to speak with his counsel. **See id**. at 4-5. Harper spoke to Attorney Sanders for most of the day. **See id**. at 6.

At about 3:35 p.m., the trial court reconvened the proceedings and Harper indicated that he had an opportunity to speak with his counsel and that it was his wish to enter a guilty plea. **See id**. Prior to reconvening the proceedings, Harper had completed and signed a written guilty plea colloquy. Harper acknowledged that he assisted Attorney Sanders in filling out the colloquy, and that he signed the colloquy. **See id**. at 9. Relevantly, in the written colloquy, Harper affirmed that by pleading guilty he was giving up the right to pre-trial motions, including motions for suppression. **See** Written Guilty Plea Colloquy, 6/27/17, at 5.

During the oral guilty plea colloquy, Harper affirmed he was not under the influence of any drugs or alcohol. *See* N.T., Plea Hearing, 6/27/17, at 8. Harper acknowledged his understanding of the written plea colloquy, that he had reviewed the whole document with counsel, and that he did not have any questions about the form. *See id*. at 9. The court thoroughly set forth the elements of the offenses Harper was pleading to and the maximum sentence he could receive for each charge. *See id*. at 10-17. Harper acknowledged that he understood everything that was explained by the court and still wished to plead guilty. *See id*. at 17. The Commonwealth then set forth the factual basis for the plea on the record. *See id*. at 17-20. Harper affirmed those facts to be true. *See id*. at 20.

Harper affirmed that no one had forced or threatened him into pleading guilty, and that no promises had been made to him other than the proposed agreement with the Commonwealth. *See id*. at 22. Finally, Harper acknowledged he was satisfied with his counsels' representation. *See id*. In accepting the plea, the court concluded the plea was knowingly and voluntarily entered. *See id*. at 23.

The statements made during a plea colloquy bind a criminal defendant. *See Commonwealth v. Muhammad*, 794 A.2d 378, 384 (Pa. Super. 2002). As a result, a defendant cannot assert grounds for withdrawing the plea that contradict statements made at that time. *See Commonwealth v. Stork*, 737 A.2d 789, 790-91 (Pa. Super. 1999). Further, "[t]he law does not require that

appellant be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [appellant's] decision to plead guilty be knowingly, voluntarily and intelligently made." ***Commonwealth v. Yager***, 685 A.2d 1000, 1004 (Pa. Super. 1996) (*en banc*) (internal quotation marks and citation omitted). Harper has not shown that his decision to enter his plea was involuntary.

Harper did not challenge his guilty plea at either the guilty plea hearing or two months later at sentencing. Further, Harper did not file a motion to withdraw his guilty plea at any point or a direct appeal challenging his guilty plea. While he briefly states he should be permitted to withdraw his guilty plea in the summary of the argument and conclusion sections of his brief, ***see*** Appellant's Brief, at 10, 16, this simply is not enough to preserve the issue. Finally, at no point, including during the instant PCRA proceedings, has Harper claimed he was actually innocent of the charges or, but for Counsels' inadequate representation, he would have elected to proceed to trial. Rather, he argues that had he had more information related to the omnibus pre-trial motions, he would have chosen to litigate the motions rather than plead guilty.

At the first hearing, Attorney Lovette testified that he did not recall Harper wanting to withdraw his plea between the plea hearing and sentencing. ***See*** N.T., PCRA Hearing, 7/8/21, at 21. Attorney Lovette stated it was his practice to file a motion to withdraw a plea if a client asked him to do so. ***See id***. Accordingly, if Harper had asked him to file a motion to withdraw the plea,

he would have. *See id*. Attorney Lovette further testified that Harper did not say anything about wanting to withdraw his plea at the sentencing hearing. *See id*. at 50.

Attorney Lovette testified that all pretrial motions that were filed on Harper's behalf were set to be litigated at the omnibus motion hearing which was scheduled for June 27, 2017. *See id*. at 23. Attorney Lovette stated the hearing was not held because Harper accepted a plea offer. *See id*. Attorney Lovette testified that Counsel was prepared to litigate the pretrial motions at the motions hearing scheduled for June 27, 2017, if Harper had decided not to enter his guilty plea. *See id*. at 38-48.

Attorney Sanders testified at the evidentiary hearings held on August 24, 2021 and November 9, 2021. Attorney Sanders testified that Counsel had discussed possible defenses with Harper "at length." *See* N.T., PCRA Hearing, 11/9/21, at 14. Attorney Sanders clarified that defenses were not discussed at length specifically on the day of the plea however, because a majority of the day was spent going back and forth discussing the offer and trying to negotiate a plea that was acceptable to Harper. *See id*. at 14-15. While parts of the conversation that day dealt with defenses, a majority of the conversation pertained to negotiations, by Harper's own choosing. *See id*. at 16-17.

After speaking with Harper for multiple hours prior to the plea, Attorney Sanders believed Harper was able to make a knowing, voluntary, and

intelligent choice to enter a plea. *See id*. at 56. Attorney Sanders affirmed that Harper did not have any difficulty understanding anything when they completed the written colloquy form together, and that if Harper did not understand something, Attorney Sanders would have informed the court. *See id*. at 56-57. Attorney Sanders stated that "[t]here was never an indication any time between the plea and whenever the sentencing occurred that [Harper] wanted to withdraw that plea or that he did not understand the plea bargain itself and voluntarily, knowingly pled it." *Id*. at 57-58. Attorney Sanders affirmed the same was true for after sentencing. *See id*. at 58.

Attorney Sanders was adamant that Harper understood the status of the case, in that if Harper did not accept a plea that day, counsel would be litigating the pretrial motions that same day. *See id*. at 59. Attorney Sanders was confident that Harper understood that there was a possibility that he could prevail on one or more of the omnibus pretrial motions if he chose to pursue them. *See id*. It was a fair back and forth between Harper and Attorney Sanders during the numerous hours they spent discussing the plea. *See id*. Attorney Sanders clarified that Harper did not have any questions about the provision in the written plea colloquy providing that he understood he was giving up his ability to file pretrial motions. *See id*. at 62. Finally, Attorney Sanders affirmed that to the best of his ability he tried to inform Harper of the evidence against him, possible defenses, what status the case was at, up to and including what counsel knew on June 27, 2017. *See id*. at 75.

Harper testified on his own behalf at the next two evidentiary hearings, held on November 23, 2021 and January 4, 2022. Harper admitted that prior to sentencing, Attorney Lovette notified Harper that if there was anything he wanted to change, that at that time Harper had the opportunity to withdraw his plea. *See* N.T., PCRA Hearing, 11/23/21, at 35. Harper stated he believed doing that "would have been ridiculous" and "wouldn't have went nowhere." *Id*. Harper stated that Attorney Lovette asked "me was this – is this what I wanted them to do" and he responded "yeah." *Id*. at 36-37.

Harper testified that prior to his plea, Attorney Sanders discussed the motion to suppress with him. *See id*. at 37-38. Harper stated that Attorney Sanders told him he didn't believe the motion would be successful, and Harper believed him. *See id*. at 38.

On cross-examination, Harper affirmed that he spoke with Attorney Sanders for approximately five hours before entering his guilty plea. *See id*. at 52. Harper agreed that he had plenty of time during those five hours to ask Attorney Sanders any questions he had about the case. *See id*. at 52-53.

While Harper had claimed Attorney Sanders never gave any reason or explanation as to why he thought the suppression motion would not be successful, Harper affirmed that he never asked for an explanation during the five hours that they talked about the plea offer. *See id*. at 56.

The PCRA court specifically credited the testimony of Attorneys Lovette and Sanders. *See* PCRA Court Opinion, 3/13/23, at 5. Along with the court's

factual determinations, these credibility determinations are binding on us. *See Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 779 (Pa. Super. 2015).

For the reasons set forth above, we conclude that Harper is entitled to no relief. The record supports the PCRA court's determination. Moreover, having conducted an independent review of the record in light of the PCRA petition, we agree that the PCRA petition is meritless.

Accordingly, for the reasons discussed above, we affirm the PCRA court's dismissal of Harper's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/10/2024